## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| **CASSANDRA OLIVER** )<br>    **70 Mote Crossing Road** )<br>    **Covington, GA 30016** )<br>)<br>    **Plaintiff,** )<br>)<br>      **vs.** )<br>)<br>**SOUTH CENTRAL** )<br>**CORRECTIONAL CENTER** )<br>    *Serve Warden at:* )<br>    **Michele Buckner** )<br>    **255 West Highway 32** )<br>    **Licking, MO 65542** )<br>)<br>    **and** )<br>)<br>**MISSOURI DEPARTMENT** )<br>**OF CORRECTIONS** )<br>    *Serve Director at:* )<br>    **Anne L. Precythe** )<br>    **2729 Plaza Drive** )<br>    **PO Box 236** )<br>    **Jefferson City, MO 65102** )<br>)<br>    **and** )<br>)<br>**STATE OF MISSOURI** )<br>    *Serve Attorney General at:* )<br>    **Eric Schmitt** )<br>    **207 West High Street** )<br>    **PO Box 899** )<br>    **Jefferson City, MO 65102** )<br>)<br>    **and** )<br>)<br>**ASHOK KUMAR R. CHADA, M.D.** )<br>    *Serve at:* )<br>    **6903 18th Ave. Apt. 1R** )<br>    **Brooklyn, NY 11204** )<br>)<br>) | **Case No.**<br><br>**JURY TRIAL REQUESTED** |

and )
 )
**SANDRA G. ZAKROFF, M.D.** )
 *Serve at:* )
 **835 N. Crews Way** )
 **Star, ID 83669** )
 )
 and )
 )
**DONALD KENT MCNUTT, D.O.** )
 *Serve at:* )
 **1416 Rosner Hills Road** )
 **Jefferson City, MO 65109** )
 )
 and )
 )
**SHANA G. HENSEL, BSN, RN** )
 *Serve at:* )
 **1222 County Road 726** )
 **Centerville, MO 63633** )
 )
 and )
 )
**SHEILA R. DUNCAN, NURSE** )
 *Serve at:* )
 **16097 Maries Road 527** )
 **Rolla, MO 65401** )
 )
 and )
 )
**MARLEY A. STEPHAN, NURSE** )
 *Serve at:* )
 **1126 Highway P** )
 **Salem, MO 65560** )
 )
 and )
 )
**REBECCA E. MURR, NURSE** )
 *Serve at:* )
 **309 County Road 4180** )
 **Salem, MO 65560** )
 )
 and )
 )
**KERRY J. HARTMAN, NURSE** )
 *Serve at:* )

**113 Wyn Street**
**Houston, MO 65483**

**and**

**TEXAS COUNTY MEMORIAL HOSPITAL**
**HEALTHCARE FOUNDATION**
 *Serve Registered Agent at:*
 **1333 S. Sam Houston Boulevard**
 **Houston, MO 65483**

**and**

**JOHN DOE 1, 2, and 3**

**and**

**ROBERT R. KUNKEL, M.D.**
 *Serve at:*
 **316 Lake View Drive**
 **Washington, MO 63090**

**Defendants.**

## COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Cassandra Oliver, by and through counsel, individually and on behalf of Michael L. Anderson III ("Decedent"), and for her Complaint for Damages against the above-named Defendants, states and alleges to the Court, as follows:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, which provide this Court with original jurisdiction over cases and controversies raising federal questions and claims, such as one or more of the questions and/or claims raised below. This Court also has jurisdiction in this matter, pursuant to 28 U.S.C. §§ 1332, due to the diversity of citizenship of the parties and the amount in controversy being in excess of $75,000.00. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

2.     Venue is proper in this Court as the incidents and events giving rise to Plaintiff's claims arose and occurred within Texas County, Missouri and are hereby within the geographical boundaries of the United States District Court for the Western District of Missouri.

## PARTIES

3.     Plaintiff is, and was at all relevant times, a citizen of the United States of America and a resident of the State of Georgia, who brings this action – as Decedent's biological mother (and therefore the appropriate party to bring an action for wrongful death pursuant to Mo. Rev. Stat. § 537.080) – to recover for damages as a result of Defendants' medical negligence and the violation of Decedent's Constitutional rights, resulting in injuries, harms, and losses, as set forth below.

4.     Defendant State of Missouri (the "State Defendant") is a sovereign political entity that operates and controls Defendant Missouri Department of Corrections (the "Department Defendant"), which further operates and controls Defendant South Central Correctional Center (the "Correctional Center Defendant"), located at 255 West Highway 32 in Licking, Texas County, MO 65542.  Any liability as alleged in this lawsuit on the part of the Correctional Center Defendant flows to the Department Defendant and flows further through to the State Defendant pursuant to the doctrine of *respondeat superior*.

5.     The Correctional Center Defendant provided healthcare services and treatment to Decedent through its employees, agents, doctors, and nurses at its infirmary.

6.     At all relevant times, the Correctional Center Defendant represented and held itself out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

7. Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman are, or were at all relevant times, employees and/or agents of the Correctional Center Defendant, the Department Defendant, and/or the State Defendant (all, collectively, the "MO Defendants"; only the final three of this list to be referred to as the "MO Entity Defendants").

8. Defendant Chada is currently a resident of New York, but was a resident of Missouri when the events recounted below occurred; at all relevant times, he is and/or was a physician duly licensed and authorized to practice medicine in the State of Missouri. At all times relevant, Defendant Chada held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant Chada provided care to Decedent as a physician at the South Central Correctional Center infirmary (ID#: AKC002MD).

9. Upon information and belief, Defendant Chada has a history of being disciplined by the College of Physicians and Surgeons of Ontario (Canada) for negligent administration of antibiotics and negligent medical record-keeping, both of which Plaintiff alleges occurred in relation to Dr. Chada's treatment of Decedent.

10. Defendant Zakroff is currently a resident of Idaho, but was a resident of Missouri when the events recounted below occurred; at all relevant times, she is and/or was a physician duly licensed and authorized to practice medicine in the State of Missouri. and a physician duly licensed and authorized to practice medicine in the State of Missouri. At all times, Defendant Zakroff held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant Zakroff provided care to Decedent as a physician at the South Central Correctional Center infirmary (ID #: SGZ000EC).

11. Defendant McNutt is, and was at all relevant times, a resident of Missouri and a

physician duly licensed and authorized to practice medicine in the State of Missouri. At all times, Defendant McNutt held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant McNutt provided care to Decedent as a physician at or for the South Central Correctional Center.

12.     Defendant Hensel is, and was at all relevant times, a resident of Missouri and was an employee and/or agent of the Correctional Center Defendant holding the title and/or position of nurse (ID #: SGH000SC).

13.     Defendant Duncan is, and was at all relevant times, a resident of Missouri and was an employee and/or agent of the Correctional Center Defendant holding the title and/or position of nurse (ID #: SRD000SC).

14.     Defendant Stephan is, and was at all relevant times, a resident of Missouri and was an employee and/or agent of the Correctional Center Defendant holding the title and/or position of nurse (ID #: MAS001SC).

15.     Defendant Murr is, and was at all relevant times, a resident of Missouri and was an employee and/or agent of the Correctional Center Defendant holding the title and/or position of nurse (ID #: REM000SC).

16.     Defendant Hartman is, and was at all relevant times, a resident of Missouri and was an employee and/or agent of the Correctional Center Defendant holding the title and/or position of nurse (ID #: KJH00#SC).

17.     Defendant Texas County Memorial Hospital (the "Hospital Defendant") is, and was at all relevant times, a Nonprofit Corporation organized and in good standing in the State of Missouri with its principal place of business at 1333 S. Sam Houston Boulevard in Houston, Texas County, MO.

18.     The Hospital Defendant provided healthcare services and treatment to Decedent through its employees, agents, doctors, and nurses at its hospital and through its EMS services.

19.     At all relevant times, the Hospital Defendant represented and held itself out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

20.     Defendants Kunkel and John Does 1-3 are employees and/or agents of the Hospital Defendant (all, collectively, the "TCMH Defendants").

21.     Defendant Kunkel is, and was at all relevant times, a resident of Missouri and a physician duly licensed and authorized to practice medicine in the State of Missouri. At all times, Defendant Kunkel held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant Kunkel provided care to Decedent as a physician at the Texas County Memorial Hospital.

22.     Defendant John Doe 1, upon information and belief, is named Josh Huffman and is, or at least was at all relevant times, a resident of Missouri and was an employee and/or agent of the Hospital Defendant holding the title and/or position of EMT-B.

23.     Defendant John Doe 2 is, upon information and belief, is named E. Wilson and is, or at least was at all relevant times, a resident of Missouri and was an employee and/or agent of the Hospital Defendant holding the title and/or position of EMT.

24.     Defendant John Doe 3, upon information and belief, is named Tom B. and is, or at least was at all relevant times, a resident of Missouri and was an employee and/or agent of the Hospital Defendant holding the title and/or position of EMT-P.

25.     There are possibly other John Doe and/or Jane Doe Defendants who belong in either the MO Defendants group or the TCMH Defendants group who also contributed to the negligence

and/or Constitutional violations alleged herein; therefore, Plaintiff reserves the right to conduct discovery as to those people and to add them as parties, if needed. As such, all who were involved in the care or treatment of Decedent at either location should be put on notice that they may be added in as a party-Defendant, such that adding them in should relate back to this filing date.

**FACTS COMMON TO ALL COUNTS AND DEFENDANTS**

26.     Decedent Michael L. Anderson III was a 28-year-old father of three children (**all currently minors**) when – on February 6, 2020 – he died amongst strangers in an ambulance on its way from the South Central Correctional Center infirmary to the Texas County Memorial Hospital emergency room.

27.     When Decedent entered the Correctional Center Defendant's custody and control – on January 15, 2020 – he was healthy.

28.     Upon information and belief, Decedent was a cooperative and compliant inmate during the 22 days he was in the Correctional Center Defendant's custody and control.

29.     Upon information and belief, sometime after January 15, 2020, Decedent's health, physical condition, and demeanor began to change and decline to such an extent as to become visible and/or noticeable to correctional officers, other inmates and/or other people, including Plaintiff.

30.     Decedent would have been released from the Correctional Center Defendant's custody and control upon completion of a 30-day sentence **a mere 8 days** after his death.

31.     Decedent's cause of death, according to his autopsy, was bronchopneumonia.

32.     Bronchopneumonia almost never results in the death of someone as young as Decedent.

33.     At the time of Decedent's autopsy, he had consolidations in his right lung in both

8

the upper and middle lobes.

34. At the time of Decedent's autopsy, his right lung weighed over twice as much as normal.

35. At least as early as January 30, 2020, Decedent made a medical service request to the Correctional Center Defendant making it aware that he was having difficulty breathing, sleeping, and keeping food down.

36. At least as early as February 2, 2020, Decedent was coughing up blood.

37. Decedent was not seen by the Correctional Center Defendant's medical personnel (or any other medical personnel) until February 4, 2020: 2 days prior to Decedent's death.

38. On February 4, 2020, the Correctional Center Defendant's medical personnel assessed Decedent with, and treated him for, latent Tuberculosis **only**.

39. Despite being aware that Decedent had been coughing up blood for at least 2 days, Defendant Chada continued treating Decedent as if he had Tuberculosis and left him in the infirmary on respiratory isolation.

40. Dr. Chada did not have Decedent intubated at this time (nor at any time prior or later).

41. The next day, on February 5, 2020 – one day prior to Decedent's death – Decedent made another medical service request, this time a self-declared emergency, making the Correctional Center Defendant further aware that he was coughing up blood, having severe chest pain, severe difficulty breathing, and even telling them (on multiple occasions) "**I can't breathe**."

42. In response, on or about 8:30 a.m. on February 5, 2020, Decedent's nurse – Defendant Murr – had Decedent spit in a cup, noted that the spit contained blood, and determined this to be a medical emergency.

43.     An ambulance was not called for Decedent on February 5, 2020, and did not arrive for Decedent until 8:15 p.m. **the next day**.

44.     Instead, on February 5, 2020, Decedent was given a nebulizer treatment, left on respiratory isolation, and given another purified protein derivative (PPD) test (a test for Tuberculosis).

45.     The next day (the day of Decedent's death), at or around 10:36 a.m., Defendant McNutt determined, by looking at Decedent's x-ray and comparing it with one taken on December 5, 2019, that there had been a change since the previous x-ray, that Decedent did not have Tuberculosis, and that Decedent needed to be treated with some kind of antibiotic **other than** the one being used.

46.     At or around 11:52 a.m. on the day of Decedent's death, Defendant McNutt called someone – presumably Defendant Chada – at the South Central Correctional Center and notified him that Decedent had upper and middle lobe pneumonia with consolidation.

47.     Even after 11:52 a.m. on the day of Decedent's death (after Decedent had been mistreated and misdiagnosed for over an entire day), Defendant Chada continued to treat Decedent for Tuberculosis while awaiting the results of Decedent's AFB test (another test for Tuberculosis).

48.     Upon information and belief, at least as early as 3:29 p.m. on the day of Decedent's death, Decedent's vitals were taken and read as follows: blood pressure of 150/100, a pulse of 146, and a respiration rate of 32.

49.     Upon information and belief, Decedent's medical records from the Correctional Center Defendant incorrectly state that the vitals referenced directly above were taken at or around 8:54 p.m. on the day of Decedent's death.

50.     Oddly, at or around 7:45 p.m. on the day of Decedent's death, the same alarming

vitals referenced above are reproduced, except that Decedent's pulse was listed even higher – almost 20 beats per minute higher – at 160.

51.     Just prior to those vitals being read and recorded by Defendant Hensel, Decedent knocked on the window to get her attention; when Defendant Hensel entered the room, Decedent was using his accessory muscles in his abdomen to breathe.

52.     Defendant Hensel proceeded to have Decedent **turn off the television** and administered to him a nebulizer treatment that lasted for 15 seconds before Decedent told her again that "**I can't breathe**"; at or around this time, Defendant Hensel had the staff nurse (upon information and belief, either one of the MO Defendants with a nursing position/title) go get an oxygen tank and non-rebreather mask.

53.     Defendant Hensel counted Decedent's breaths per minute while waiting on oxygen and determined that they were as high as 88 and that Decedent's skin was cold to the touch.

54.     It was not until this point – sometime after 7:45 p.m. on February 6, 2020 – that Defendant Hensel telephoned Defendant Zakroff (who was "on call") and that the order was given to send Decedent to the emergency room via ambulance.

55.     The ambulance – upon information and belief, being driven and/or staffed by Defendants John Doe 1, 2, and/or 3 (the "EMT Defendants") – did not arrive until at or around 8:15 p.m., at which point one or more of the EMT Defendants was given a report by Defendant Hensel.

56.     Upon information and belief, while in the presence of one or more of the EMT Defendants, Decedent gave his verbal permission to be intubated.

57.     None of the EMT Defendants (nor the other Defendants present at South Central Correctional Center at that time) intubated Decedent prior to him being taken to the ambulance.

58.     Instead, Decedent was loaded onto a stretcher and, around 8:20 p.m., left for the emergency room of the Hospital Defendant.

59.     At or around 9:09 p.m., Decedent arrived via ambulance to the emergency room of Defendant Texas County Memorial Hospital; by this time Decedent had been intubated and CPR was in progress, but Decedent exhibited pulseless electrical activity (PEA).

60.     At the orders of Defendant Kunkel, medical personnel of the Hospital Defendant continued treatment and CPR unsuccessfully until, at or around 9:23 p.m. on February 6, 2020, Defendant Kunkel pronounced Decedent's time of death.

61.     At or around 9:52 p.m., someone – presumably named Cody – from the Hospital Defendant's emergency room staff contacted Defendant Hensel to discuss Decedent's death and treatment at the Correctional Center Defendant's infirmary; Defendant Hensel stated that she administered an albuterol treatment until Decedent's heart rate dropped by 20 beats per minute and his oxygen also dropped, so she discontinued said treatment.

62.     Defendant Hensel's medical notes state that, at 9:30 p.m., she received a call from Cody at Texas County Memorial Hospital informing her that Decedent had expired; Defendant Hensel's medical notes state nothing about a call at 9:52 p.m. nor do they say anything about stopping the nebulizer treatment due to a drop in Decedent's heart rate and/or oxygen.

63.     Decedent was laid to rest on February 21, 2020, one week after he would have been freed from the custody and control of the Correctional Center Defendant, had he simply lived that long.

64.     Decedent would not have died from bronchopneumonia had one or more of the MO Defendants properly and timely diagnosed and treated him with the proper antibiotic.

65.     Decedent would not have died from bronchopneumonia had one or more of the MO

Defendants or one or more of the TCMH Defendants intubated him earlier than he was, in fact, intubated.

66.     Decedent would not have died from bronchopneumonia had one or more of the TCMH Defendants properly treated him in the ambulance and/or in the emergency room.

67.     With the care and treatment meeting the reasonable standard of care applicable to all Defendants, Decedent had a substantial likelihood of recovering from bronchopneumonia; the below-referenced negligence therefore deprived Decedent of the substantial chance of recovery from the same and resulted in the damages described herein.

## ADDITIONAL FACTS RELATING TO NURSES AND DOCTORS

68.     Pursuant to Missouri's "Nursing Practices Act," Chapter 335, MO. REV. STAT., practical nurses are required, at all times, to be under the "guidance or supervision provided by a person licensed by a state regulatory board to prescribe medications and treatments or a registered professional nurse . . ." § 335.016(14) MO. REV. STAT.

69.     Pursuant to Missouri's "Nursing Practices Act," Chapter 335, MO. REV. STAT., registered professional nurses are allowed, inter alia, to "administ[er] . . . medications and treatments as prescribed by a person licensed by a state regulatory board to prescribe medications and treatments." § 335.016(15)(c), MO. REV. STAT.

70.     On information and belief, the registered nurses and/or physicians responsible for providing guidance, training, and/or supervision of the practical nurses regularly and routinely failed to provide such guidance, training and/or supervision, including but not limited to failing to review the medical records and patient notes prepared by the practical nurses.

71.     On information and belief, the Correctional Center Defendant, its staff, and its officials knew and/or should have known that the registered nurses and/or physicians responsible

for providing guidance and/or supervision of the practical nurses regularly and routinely failed to provide such guidance and/or supervision, including but not limited to failing to review the medical records and patient notes prepared by the practical nurses.

72.     On information and belief, the Correctional Center Defendant, its staff, and its officials failed and/or refused to adequately and properly discipline offending staff members for his/her failures to provide proper guidance and/or supervision of the practical nurses, including but not limited to failing to review the medical records and patient notes prepared by the practical nurses.

73.     On information and belief, it was the policy, practice, and/or custom of the Correctional Center Defendant to regularly and routinely allow and/or utilize practical nurses to perform tasks and services that should have been performed by registered nurses and/or licensed physicians, including but not limited to responding to sick calls in the inmate dormitory areas of the correctional center, assessing symptoms, making diagnoses, prescribing treatments, and monitoring patients.

74.     On information and belief, the Correctional Center Defendant, its officials, and its policymakers knew and/or should have known that it was the policy, practice, and/or custom to regularly and routinely allow and/or utilize practical nurses to perform tasks and services that should have been performed by registered nurses and/or licensed physicians, including but not limited to responding to sick calls in the inmate dormitory areas of the correctional center, assessing symptoms, making diagnoses, prescribing treatments, and monitoring patients.

75.     On information and belief, the Correctional Center Defendant, its officials, and its policymakers knew and/or should have known that this policy, practice, and/or custom of regularly and routinely allowing and/or utilizing practical nurses to perform tasks and services that should

have been performed by registered nurses and/or licensed physicians resulted in and/or would result in failures to provide adequate and necessary medical care and treatment, including care and treatment of potentially serious conditions and illnesses. On information and belief, pursuant to the Correctional Center Defendant's policies and practices, practical nurses and/or correctional officers were prohibited from referring and/or scheduling inmates for "clinic" (i.e., scheduled appointments with registered nurses and/or physicians) even if the need for such medical care and treatment was readily apparent to the practical nurses and/or correctional officers.

76.    On information and belief, the Correctional Center Defendant, its officials, and its policymakers knew and/or should have known that this policy and/or practice of prohibiting practical nurses and/or correctional officers from referring and/or scheduling inmates for "clinic" would result in inmates not being provided with adequate and necessary medical care and treatments.

77.    All of the aforementioned policies and procedures on the part of the Correctional Center Defendant rise to the level of a reckless disregard of a substantial risk of serious harm to those under its custody, control, and – ultimately – its care.

**COUNT I – Deprivation of Medical Care in Violation of the 8th and 14th Amendments to the U.S. Constitution, Cognizable Against the State of Missouri Under 42 U.S.C. § 1983**
*Against the MO Defendants*

78.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

79.    Decedent had a serious need for medical treatment, care, and attention while under the custody, control, and care of the Correctional Center Defendant.

80.    One or more of the MO Defendants knew and/or should have known of Decedent's serious need for ongoing medical treatment, care, and attention.

81.     Decedent's medical needs were so obvious and apparent as to be recognizable even to a layperson.

82.     While acting under color of state law, one or more of the MO Defendants failed and/or refused to provide Decedent with appropriate medical care, treatment, and attention, despite his clear need for such medical care, treatment, and attention.

83.     One or more of the MO Defendants knew and/or should have known that Decedent was at substantial risk of serious injury to his health, including the possibility of death, from his medical condition, but disregarded that risk by intentionally refusing and/or failing to take any reasonable measures to treat his medical conditions and/or address his medical needs.

84.     As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent suffered severe and devasting damages and injuries, prior to his death, including but not limited to physical pain and suffering and severe anxiety, fear, and mental anguish.

85.     As the direct and proximate result of the acts and/or omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate to Decedent's rights and serious medical needs, Decedent was deprived of life-saving treatment and thus suffered the loss of life, loss of future enjoyment of life, and loss of future income.

86.     As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, **Plaintiff** and each of **Decedent's 3 minor children** have been and will forever hereafter be deprived of Decedent's love, affection, consortium, care, society, companionship, comfort, support, guidance, and numerous other valuable services.

87.	The conduct of one or more of the MO Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Decedent's constitutional rights, privileges, and immunities, **<u>potentially</u>** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

88.	As a result of one or more of the MO Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **<u>potentially</u>** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

## <u>COUNT II – Unconstitutional Policy</u>
### *Against the MO Entity Defendants*

89.	Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

90.	As described herein, one or more of the MO Defendants, while acting under color of state law, either alone or in concert with others, deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not

limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

91. The misconduct of one or more of the MO Defendants, as described herein, was authorized by and undertaken pursuant to a formal policy of the Correctional Center Defendant, the Department Defendant, and/or the State Defendant (the "MO Entity Defendants"), in that it is and/or was the policy of one or more of the MO Entity Defendants to prohibit and preclude practical nurses, correctional officers and other staff from requesting that inmates be scheduled for "clinic" visits in order to be seen by registered nurses and licensed physicians, even when serious medical needs of inmates are obvious and apparent so as to necessitate such treatment.

92. The serious harms incurred by Decedent were the direct consequence of this pattern, practice, and/or custom of one or more of the MO Entity Defendants.

93. As a direct and proximate consequence of the acts of one or more of the MO Entity Defendants, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

94. As a result of one or more of the MO Entity Defendants' unlawful actions and infringements of her protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the MO Entity Defendants; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment

interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### **COUNT III – Unconstitutional Pattern, Practice, and/or Custom**
#### *Against the MO Defendants*

95.     Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

96.     As described herein, one or more of the MO Defendants, while acting under color of state law and alone or in concert with others, deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

97.     The misconduct of one or more of the MO Defendants, as described herein, was authorized by and undertaken pursuant to a practice and custom that was so widespread, well-known, and well-settled, as to constitute a standard operating procedure of the MO Defendants, in that it is and/or was the regular pattern, practice and custom to prohibit and preclude practical nurses, correctional officers and other staff from requesting that inmates be scheduled for "clinic" visits in order to be seen by registered nurses and licensed physicians, even when serious medical needs of inmates were so obvious and apparent as to necessitate such treatment.

98.     The serious harms incurred by Decedent were the direct consequence of this pattern, practice, and/or custom of the MO Defendants.

99.     As a direct and proximate consequence of the acts of one or more of the MO Defendants, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42

U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

100.    As a result of one or more of the MO Defendants' unlawful actions and infringements of her protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the MO Defendants; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### <u>COUNT IV – Unconstitutional Pattern, Practice, and/or Custom</u>
*Against the MO Defendants*

101.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

102.    As described herein, one or more of the MO Defendants deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

103.    The misconduct of one or more of the MO Defendants, as described herein, was authorized by and undertaken pursuant to a practice and custom that was so widespread, well-known, and well-settled, as to constitute a standard operating procedure of the MO Defendants, in that it is and/or was the regular pattern, practice and custom to allow unqualified practical nurses

to provide medical care and treatment, including but not limited to providing medical assessment, diagnosis, and treatment without the proper guidance and/or supervision of registered nurses and physicians and/or that were to be performed only by registered nurses and licensed physicians.

104.    The serious harms incurred by Decedent were the direct consequence of this pattern, practice, and/or custom of the MO Defendants.

105.    As a direct and proximate consequence of the acts of one or more of the MO Defendants, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

106.    As a result of one or more of the MO Defendants' unlawful actions and infringements of her protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the MO Defendants; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT V – Failure to Properly Hire, Train, Supervise, and/or Discipline
#### *Against the MO Entity Defendants*

107.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

108.     As described herein, one or more of the MO Defendants, while acting under color of state law and alone or in concert with others, deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

109.     One or more of the Entity Defendants' programs as to proper hiring, training, supervising, and/or disciplining was non-existent, inadequate, and/or failed to provide one or more of the Entity Defendants' employees and/or agents with the necessary knowledge and skills to carry out their duties and/or allowed them to routinely violate the rights of individuals without fear of repercussion or sanction.

110.     One or more of the Entity Defendants knew and/or should have known that its employees and staff would routinely be in a position of interacting with persons with serious medical needs and/or in need of necessary and appropriate medical care and treatment.

111.     In failing to properly hire, train, supervise and/or discipline its staff and employees regarding these encounters, one or more of the Entity Defendants acted with deliberate indifference to the fact that their failure to properly hire, train, supervise, and/or discipline would result in those under their care failing to receive necessary and appropriate medical care and treatments for serious medical concerns.

112.     On information and belief, this indifference to properly hiring, training, supervising, and/or disciplining has resulted in those under the care of one or more of the Entity Defendants failing to receive necessary and appropriate medical care and treatments for serious medical concerns.

113.    As a direct and proximate consequence of the acts of one or more of the MO Entity Defendants, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

114.    As a result of one or more of the MO Entity Defendants' unlawful actions and infringements of her protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the MO Entity Defendants; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT VI – Wrongful Death via Medical Malpractice/Negligence
#### *Against All Defendants*

115.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

116.    At the time of the negligent acts and occurrences complained of herein, all Defendants were acting within the course and scope of their employment and/or agency with their respective employers or contractors, as detailed above.

117.    At all times relevant, one or more of the Defendants owed a duty to those under their custody, control, and care (such as Decedent), to possess and use that degree of skill and

learning ordinarily used by the members of their profession in order to ensure their basic welfare, including ensuring that they receive necessary and adequate medical care.

118.     One or more of the Defendants breached their duty of care to provide adequate care, including planning for and administering medical care, failing to properly examine, monitor, assess, diagnose, and treat Decedent, and more specifically, because one or more of the Defendants:

    a.  Failed to use reasonable care in planning for and evaluating Decedent's medication needs;

    b.  Failed to adequately staff their respective institutions such that they would be able to reasonably and safely handle the volume of patients and administrative tasks experienced;

    c.  Failed to use reasonable care in examining Decedent and/or observing him to determine his needs and risks;

    d.  Failed to establish and or follow a policy or protocol to ensure a patient admitted in a condition such as Decedent is administered proper antibiotics and medication within a reasonable period of time;

    e.  Failed to ensure that Decedent timely received proper antibiotics;

    f.  Failed to appropriately diagnose, treat, and respond to Decedent's abnormal vital signs;

    g.  Failed to appropriately diagnose, treat, and respond to Decedent's bronchopneumonia;

    h.  Failed to properly assess and respond to Decedent's continued complaints of pain, difficulty breathing, and other indications of developing and worsening infection, including, but not limited to, the fact that he repeatedly told one or more of the Defendants that "I can't breathe";

    i.  Failed to facilitate a transfer to a hospital sooner even though it was already medically necessary;

    j.  Used conservative treatment methodologies in contravention of prevailing medical practices;

    k.  Improperly delegated clinical determinations to nursing or other personnel who were neither qualified nor licensed to make such determinations;

l.  Failed to provide cogent nursing directives;

m.  Failed to ensure minimum competency by establishing proper policies, procedures, and processes to detect and discipline incompetence or, better yet, to avoid hiring incompetent personnel altogether;

n.  Failed to properly administer, interpret, communicate the results of, and/or follow up and treat according to a CT scan and/or x-ray;

o.  Failed to have proper procedures in place to ensure proper communication and proper follow-ups, when necessary;

p.  Provided inoperable, insufficient, and/or defective equipment;

q.  Failed to provide continuity of care by not keeping thorough and/or accurate medical records;

r.  And negligently and carelessly failed to perform and measure up to the requisite standards of care and skill required and observed by licensed physicians in such other and further particulars presently unknown to Plaintiff, but which is verily believed and alleged will be uncovered upon proper discovery procedures in the course of this litigation, and which will be supplemented into this pleading.

119.  As a direct and proximate result of one or more of the Defendants' actions, Decedent was deprived of life-saving medical care and experienced injuries, medical and hospital expenses, and ultimately loss of life.

120.  As a direct and proximate result of one or more of the Defendants' actions, Plaintiff was deprived of her son and all that he meant to her life, and thereby sustained damages.

121.  Plaintiff is entitled to damages against one or more of the Defendants according to MO. REV. STAT. § 537.080 for the wrongful injuries and death of Decedent, including special damages for, among other things, his funeral and burial.

122.  Decedent endured excruciating conscious physical pain and suffering, severe mental anguish, and neglect and isolation during the weeks preceding his death, all damages that should be considered and awarded.

123.    One or more of the Defendants' conduct in this case constitutes aggravating circumstances and this conduct was undertaken with knowledge that such conduct produced a high degree of probability of injury to Decedent and was done with reckless or callous indifference and conscious disregard for the life and safety of others, **potentially** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT VII – Negligence *Per Se* in Violation of Mo. Rev. Stat. § 221.120
#### *Against the MO Defendants*

124.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

125.    Pursuant to Mo. Rev. Stat. § 221.120.1, "[i]f any prisoner confined to the county jail is sick and in the judgment of the jailer, requires the attention of a physician, dental care, or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary and proper to maintain the health of the prisoner."

126.    Decedent was a prisoner under the care, custody, and control of the MO Defendants at all times relevant.

127.     While Decedent was a prisoner under the care, custody, and control of the MO Defendants, he was in serious need of medical care and attention.

128.     Despite knowledge of the fact that Decedent was in need of serious medical care and attention, one or more of the MO Defendants failed to provide such medical care and attention or to procure the same for Decedent.

129.     Through their acts and omissions, one or more of the MO Defendants violated the requirements of MO. REV. STAT. § 221.120.1, with regard to the right of Decedent to have access to, and to receive, necessary and proper medical attention.

130.     In enacting MO. REV. STAT. § 221.120.1, the Missouri legislature clearly exercised its legislative will and intent to protect a class of persons, namely prisoners (including Decedent), by establishing the requirement that they be provided with necessary and proper medical care and attention.

131.     In committing the acts and omissions, as alleged herein, one or more of the MO Defendants violated their duties of care, as established in MO. REV. STAT. § 221.120.1.

132.     As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent suffered severe and devasting damages and injuries, prior to his death, including but not limited to physical pain and suffering and severe anxiety, fear, and mental anguish.

133.     As the direct and proximate result of the acts and/or omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent was deprived of life-saving treatment and thus suffered the loss of life, loss of future enjoyment of life, and loss of future income.

134. As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, **Plaintiff** and each of **Decedent's 3 minor children** have been and will forever hereafter be deprived of Decedent's love, affection, consortium, care, society, companionship, comfort, support, guidance, and numerous other valuable services.

135. The conduct of one or more of the MO Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Decedent's constitutional rights, privileges, and immunities, **potentially** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

136. As a result of one or more of the MO Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and should therefore receive a recovery of attorneys' fees and legal costs.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT VIII – Negligence *Per Se* in Violation of Mo. Rev. Stat. Chapter 335
*Against the MO Defendants*

137. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

138. Pursuant to Missouri's "Nursing Practices Act," MO. REV. STAT. Chapter 335, practical nurses are required, at all times, to be under the "guidance or supervision provided by a person licensed by a state regulatory board to prescribe medications and treatments or a registered professional nurse . . .." MO. REV. STAT. § 335.016(14).

139. Pursuant to Missouri's "Nursing Practices Act," MO. REV. STAT. Chapter 335, registered professional nurses are allowed, inter alia, to "administ[er] . . . medications and treatments as prescribed by a person licensed by a state regulatory board to prescribe medications and treatments." MO. REV. STAT. § 335.016(15)(c).

140. Decedent was under the medical care of one or more of the MO Defendants.

141. Upon information and belief, one or more of the MO Defendants were practical nurses and were required to practice under the guidance and supervision of a registered nurse and/or licensed physician.

142. On information and belief, one or more of the MO Defendants were registered nurses and were required to practice under the guidance and supervision of a licensed physician and/or medical doctor.

143. One or more of the MO Defendants were licensed physicians and/or medical doctors.

144. Upon information and belief, one or more of the MO Defendants provided medical care and treatment to Decedent without the guidance and/or supervision of a registered nurse and/or licensed physician and/or medical doctor, or participated in the same.

145.    Upon information and belief, one or more of the MO Defendants allowed other of the MO Defendants to provide medical care and treatment to Decedent without the guidance and/or supervision of a registered nurse and/or licensed physician and/or medical doctor, or participated in the same.

146.    Despite knowledge of the fact that Decedent was in need of serious medical care and attention, one or more of the MO Defendants provided medical care and treatment to him that exceeded the limitations of their licenses and titles and their lawful ability to do the same.

147.    Through their acts and omissions, one or more of the MO Defendants violated the requirements of MO. REV. STAT. § 335.016(14) and (16) with regards to the rights of Decedent to have access to, and to receive, necessary and proper medical attention.

148.    In enacting MO. REV. STAT. Chapter 335, the Missouri legislature clearly exercised its legislative will and intent to protect a class of persons, namely prisoners (including Decedent), by establishing the requirement that they be provided with necessary and proper medical care and attention.

149.    In committing the acts and omissions, as alleged herein, one or more of the MO Defendants violated their duties of care, as established in MO. REV. STAT. § 335.016.

150.    As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent suffered severe and devasting damages and injuries, prior to his death, including but not limited to physical pain and suffering and severe anxiety, fear, and mental anguish.

151.    As the direct and proximate result of the acts and/or omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference

to Decedent's rights and serious medical needs, Decedent was deprived of life-saving treatment and thus suffered the loss of life, loss of future enjoyment of life, and loss of future income.

152. As the direct and proximate result of the acts and omissions of one or more of the MO Defendants, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, **Plaintiff** and each of **Decedent's 3 minor children** have been and will forever hereafter be deprived of Decedent's love, affection, consortium, care, society, companionship, comfort, support, guidance, and numerous other valuable services.

153. The conduct of one or more of the MO Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Decedent's constitutional rights, privileges, and immunities, **potentially** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

154. As a result of one or more of the MO Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and should therefore receive a recovery of attorneys' fees and legal costs.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

## <u>REQUEST FOR JURY TRIAL</u>

Plaintiff hereby requests a trial by jury on all issues of fact and damages to the fullest extent of his rights pursuant to the provisions of the Seventh Amendment of the U.S. Constitution, Article I §22(a) of the Missouri Constitution, and all applicable case law interpreting such provisions.

**Respectfully submitted,**

**ZDP LAW, LLC**

*/s/ Zachary D. Poole*
Zachary D. Poole, MO #66156
Connor G. Curran, MO #69483
4330 Belleview Ave, Suite 300A
Kansas City, MO 64111
P: (816) 226-8260
F: (816) 343-9321
*zpoole@zdplaw.com*
*ccurran@zdplaw.com*

and

*/s/ Christopher D. Dandurand*
Stephen M. Gorny, MO #45417
Christopher D. Dandurand, MO #63775
**THE GORNY LAW FIRM, LC**
4330 Belleview Avenue, Suite 200
Kansas City, MO 64111
P: (816) 756-5071
F: (816) 756-5067
*steve@gornylawfirm.com*
*chris@gornylawfirm.com*

**ATTORNEYS FOR PLAINTIFF**