# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **CASSANDRA OLIVER** | ) | |
| **70 Mote Crossing Road** | ) | |
| **Covington, GA 30016** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 6:21-cv-03226-MDH** |
| | ) | |
| **MICHELE BUCKNER ,** | ) | |
| *personally and in her official capacity as warden* | ) | |
| *of the South Central Correctional Center* | ) | **JURY TRIAL REQUESTED** |
|    *Serve at:* | ) | |
|    **255 West Highway 32** | ) | |
|    **Licking, MO 65542** | ) | |
| | ) | |
|    **and** | ) | |
| | ) | |
| **ANNE L. PRECYTHE,** | ) | |
| *personally and in her official capacity as director* | ) | |
| *of the Missouri Department of Corrections* | ) | |
|    *Serve at:* | ) | |
|    **Anne L. Precythe** | ) | |
|    **2729 Plaza Drive** | ) | |
|    **PO Box 236** | ) | |
|    **Jefferson City, MO 65102** | ) | |
| | ) | |
|    **and** | ) | |
| | ) | |
| **ERIC SCHMITT,** | ) | |
| *personally and in his official capacity as attorney* | ) | |
| *general of the State of Missouri* | ) | |
|    *Serve at:* | ) | |
|    **207 West High Street** | ) | |
|    **PO Box 899** | ) | |
|    **Jefferson City, MO 65102** | ) | |
| | ) | |
|    **and** | ) | |
| | ) | |
| **MISSOURI DEPARTMENT** | ) | |
| **OF CORRECTIONS** | ) | |
|    *Serve Director at:* | ) | |
|    **Anne L. Precythe** | ) | |

**2729 Plaza Drive** )
**PO Box 236** )
**Jefferson City, MO 65102** )
 )
 **and** )
 )
**STATE OF MISSOURI** )
 *Serve Attorney General at:* )
 **Eric Schmitt** )
 **207 West High Street** )
 **PO Box 899** )
 **Jefferson City, MO 65102** )
 )
 **and** )
 )
**CORIZON, LLC** )
 *Serve Registered Agent at:* )
 **C T Corporation System** )
 **120 South Central Ave** )
 **Clayton, MO 63105** )
 )
 **and** )
 )
**ASHOK KUMAR R. CHADA, M.D.** )
*personally and in his official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
 *Serve at:* )
 **6903 18th Ave. Apt. 1R** )
 **Brooklyn, NY 11204** )
 )
 **and** )
 )
**SANDRA G. ZAKROFF, M.D.** )
*personally and in her official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
 *Serve at:* )
 **835 N. Crews Way** )
 **Star, ID 83669** )
 )
 **and** )
 )
**DONALD KENT MCNUTT, D.O.** )
*personally and in his official capacity as a* )
*Missouri State actor and/or acting under color of* )

2

*Missouri State law or authority* )
    *Serve at:* )
    **1416 Rosner Hills Road** )
    **Jefferson City, MO 65109** )
     )
    **and** )
     )
**SHANA G. HENSEL, BSN, RN** )
*personally and in her official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
    *Serve at:* )
    **1222 County Road 726** )
    **Centerville, MO 63633** )
     )
    **and** )
     )
**SHEILA R. DUNCAN, NURSE** )
*personally and in her official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
    *Serve at:* )
    **16097 Maries Road 527** )
    **Rolla, MO 65401** )
     )
    **and** )
     )
**MARLEY A. STEPHAN, NURSE** )
*personally and in her official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
    *Serve at:* )
    **1126 Highway P** )
    **Salem, MO 65560** )
     )
    **and** )
     )
**REBECCA E. MURR, NURSE** )
*personally and in her official capacity as a* )
*Missouri State actor and/or acting under color of* )
*Missouri State law or authority* )
    *Serve at:* )
    **309 County Road 4180** )
    **Salem, MO 65560** )
     )
    **and** )

3

**KERRY J. HARTMAN, NURSE**
*personally and in her official capacity as a*
*Missouri State actor and/or acting under color of*
*Missouri State law or authority*
    *Serve at:*
    **113 Wyn Street**
    **Houston, MO 65483**

    **and**

**TEXAS COUNTY MEMORIAL HOSPITAL**
**COMMUNITY IMPROVEMENT DISTRICT**
    *Serve at:*
    **Christopher Strickland**
    **1333 S. Sam Houston Boulevard**
    **Houston, MO 65483**

    **and**

**TEXAS COUNTY MEMORIAL HOSPITAL**
    *Serve at:*
    **1333 S. Sam Houston Boulevard**
    **Houston, MO 65483**

    **and**

**CHRISTOPHER STRICKLAND**
*personally and in his official capacity as CEO of*
*Texas County Memorial Hospital and/or*
*Chairman of the Board of Trustees*
    *Serve at:*
    **1333 S. Sam Houston Boulevard**
    **Houston, MO 65483**

    **and**

**WESLEY E. MURRAY**
*personally and in his official capacity as former*
*CEO of Texas County Memorial Hospital and/or*
*former Chairman of the Board of Trustees*
    *Serve at:*
    **1333 S. Sam Houston Boulevard**
    **Houston, MO 65483**

    **and**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

4

**JOSHUA HOFFMAN**
*personally and in his official capacity as a*          )
*Missouri State actor and/or acting under color of*   )
*Missouri State law or authority*                      )
    *Serve at:*                    )
    **1333 S. Sam Houston Boulevard**  )
    **Houston, MO 65483**           )
                                   )
    **and**                        )
                                   )
**TIM BAUMGARNER**                                     )
*personally and in his official capacity as a*         )
*Missouri State actor and/or acting under color of*   )
*Missouri State law or authority*                      )
    *Serve at:*                    )
    **1333 S. Sam Houston Boulevard**  )
    **Houston, MO 65483**           )
                                   )
    **Defendants.**                )

## FIRST AMENDED COMPLAINT FOR DAMAGES

**COMES NOW** Plaintiff Cassandra Oliver, by and through counsel, individually and on behalf of Michael L. Anderson III ("Decedent"), and for her First Amended Complaint for Damages against the above-named Defendants, states and alleges to the Court, as follows:

## JURISDICTION AND VENUE

1.	Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343, which provide this Court with original jurisdiction over cases and controversies raising federal questions and claims, such as one or more of the questions and/or claims raised below. This Court also has jurisdiction in this matter, pursuant to 28 U.S.C. §§ 1332, due to the diversity of citizenship of the parties and the amount in controversy being in excess of $75,000.00. Further, this Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367.

2.	Venue is proper in this Court as the events giving rise to Plaintiff's claims occurred within Texas County, Missouri such that said claims arose within the geographical boundaries of

5

the United States District Court for the Western District of Missouri.

## **PARTIES**

3. Decedent Michael L. Anderson III was a 28-year-old father of three children (**all currently minors**) when – on February 6, 2020 – he died in an ambulance on its way from the South Central Correctional Center infirmary to the Texas County Memorial Hospital emergency room.

4. Plaintiff is, and was at all relevant times, a citizen of the United States of America and a resident of the State of Georgia, who brings this action – as Decedent's biological mother (and therefore the appropriate party to bring an action for wrongful death pursuant to Mo. Rev. Stat. § 537.080) – to recover for damages as a result of Defendants' medical negligence and violation of Decedent's Constitutional rights, resulting in injuries, harms, and losses, as set forth below.

5. Defendant Michele Buckner is an individual who, upon information and belief, is and/or was at all relevant times a resident of the State of Missouri. Defendant Buckner is and/or was at all relevant times the warden of the South Central Correctional Center. Defendant Buckner is sued both in her personal capacity and in her official capacity as such.

6. Defendant Anne L. Precythe is an individual who, upon information and belief, is and/or was at all relevant times a resident of the State of Missouri. Defendant Precythe is and/or was at all relevant times the director of the Missouri Department of Corrections. Defendant Precythe is sued both in her personal capacity and in her official capacity as such.

7. Defendant Eric Schmitt is an individual who, upon information and belief, is and/or was at all relevant times a resident of the State of Missouri. Defendant Schmitt is and/or was at all relevant times the attorney general of the State of Missouri. Defendant Schmitt is sued both in

his personal capacity and in his official capacity as such.

8.      Defendant State of Missouri (the "State Defendant") is and/or was at all relevant times a sovereign political entity that operates and controls Defendant Missouri Department of Corrections (the "Department Defendant"), which further operates and controls the South Central Correctional Center (the "Correctional Center"), located at 255 West Highway 32 in Licking, Texas County, MO 65542.

9.      Defendant Corizon, LLC is a Missouri limited liability company with a principal place of business located at 103 Powell Court, Brentwood, TN 37027.  Upon information and belief, Defendant Corizon and/or its agents or apparent agents provided healthcare services and treatment to Decedent through its employees, agents, doctors, and/or nurses at the infirmary located within the South Central Correctional Center.

10.     At all relevant times, Defendant Corizon represented itself or held itself out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

11.     Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman are, or were at all relevant times, employees, agents, and/or apparent agents of Defendant Corizon.

12.     Defendant Chada is currently a resident of New York, but was a resident of Missouri when the events recounted below occurred; at all relevant times, he is and/or was a physician licensed and authorized to practice medicine in the State of Missouri. At all times relevant, Defendant Chada held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant Chada provided care to Decedent as a physician at the South Central Correctional Center infirmary (ID#: AKC002MD).  Defendant Chada is sued both in his personal capacity and in his official capacity

as such.

13.     Upon information and belief, Defendant Chada has a history of being disciplined by the College of Physicians and Surgeons of Ontario (Canada) for negligent administration of antibiotics and negligent medical record-keeping.

14.     Defendant Zakroff is currently a resident of Idaho, but was a resident of Missouri when the events recounted below occurred; at all relevant times, she is and/or was a physician licensed and authorized to practice medicine in the State of Missouri.  At all times relevant, Defendant Zakroff held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant Zakroff provided care to Decedent as a physician (ID #: SGZ000EC) in relation to Decedent's stay at the South Central Correctional Center infirmary.  Defendant Zakroff is sued both in her personal capacity and in her official capacity as such.

15.     Defendant McNutt is and/or was at all relevant times a resident of Missouri and a physician licensed and authorized to practice medicine in the State of Missouri. At all times relevant, Defendant McNutt held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent. Defendant McNutt provided care to Decedent as a physician in relation to Decedent's stay at the South Central Correctional Center infirmary.  Defendant McNutt is sued both in his personal capacity and in his official capacity as such.

16.     Defendant Hensel is and/or was at all relevant times, a resident of Missouri and was an employee and/or agent of Defendant Corizon holding the title and/or position of nurse (ID #: SGH000SC).  Defendant Hensel is sued both in her personal capacity and in her official capacity as such.

17. At all times relevant, Defendant Hensel held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

18. Defendant Duncan is and/or was at all relevant times, a resident of Missouri and was an employee and/or agent of Defendant Corizon holding the title and/or position of nurse (ID #: SRD000SC). Defendant Duncan is sued both in her personal capacity and in her official capacity as such.

19. At all times relevant, Defendant Duncan held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

20. Defendant Stephan is and/or was at all relevant times, a resident of Missouri and was an employee and/or agent of Defendant Corizon holding the title and/or position of nurse (ID #: MAS001SC). Defendant Stephan is sued both in her personal capacity and in her official capacity as such.

21. At all times relevant, Defendant Stephan held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

22. Defendant Murr is and/or was at all relevant times, a resident of Missouri and was an employee and/or agent of Defendant Corizon holding the title and/or position of nurse (ID #: REM000SC). Defendant Murr is sued both in her personal capacity and in her official capacity as such.

23. At all times relevant, Defendant Murr held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

24. Defendant Hartman is and/or was at all relevant times, a resident of Missouri and was an employee and/or agent of Defendant Corizon holding the title and/or position of nurse (ID #: KJH00#SC). Defendant Hartman is sued both in her personal capacity and in her official

9

capacity as such.

25. At all times relevant, Defendant Hartman held herself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

26. Defendant Texas County Memorial Hospital (the "Hospital Defendant") is, and was at all relevant times, a hospital operating at 1333 S. Sam Houston Boulevard in Houston, Texas County, MO.

27. At all relevant times, the Hospital Defendant represented and held itself out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

28. Upon information and belief, the Hospital Defendant is staffed by employees, agents, and/or apparent agents of Defendant Texas County Memorial Hospital Community Improvement District (the "District Defendant").

29. At all relevant times, the District Defendant represented and held itself out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

30. Upon information and belief, Defendant Christopher Strickland is a resident of the State of Missouri who is the current CEO of the Hospital Defendant and/or the chairman of its Board of Trustees. Defendant Strickland is sued both in his personal capacity and in his official capacity as such.

31. Upon information and belief, Defendant Wesley E. Murray is a resident of the State of Missouri who was, during the Decedent's death, the CEO of the Hospital Defendant and/or the chairman of its Board of Trustees. Defendant Murray is sued both in his personal capacity and in his official capacity as such.

10

32. At all relevant times, Defendant Murray represented and held the Hospital Defendant out to the public, and to Plaintiff and Decedent in particular, as fully equipped and staffed by physicians, nurses, and other medical personnel properly trained and skilled in providing care to Decedent.

33. Upon information and belief, Defendant Joshua Hoffman is and/or was at all relevant times, a resident of Missouri and was an employee, agent, and/or apparent agent of the District Defendant and/or the Hospital Defendant, holding the title and/or position of EMT-B.

34. At all relevant times, Defendant Hoffman represented and held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

35. Upon information and belief, Defendant Tim Baumgarner is and/or was at all relevant times, a resident of Missouri and was an employee, agent, and/or apparent agent of the District Defendant and/or the Hospital Defendant, holding the title and/or position of EMT-P.

36. At all relevant times, Defendant Baumgarner represented and held himself out to the public, and to Plaintiff and Decedent in particular, as properly trained and skilled in providing care to Decedent.

37. Pursuant to Mo. Rev. Stat. Section 537.610, none of the entity Defendants (neither the State, the Department, Corizon, the District, nor the Hospital) is entitled to sovereign immunity because, upon information and belief, each has purchased liability insurance or has adopted a self-insurance plan covering the damages alleged herein.

38. Neither the State of Missouri, the Missouri Department of Corrections, nor Defendant Corizon has sovereign immunity in this suit because each, by virtue of its employment and/or agency relationship with the other two, is considered a hybrid public-private entity, as

11

opposed to a public entity.

39. Neither the District Defendant nor the Hospital Defendant has sovereign immunity in this suit because each, by virtue of its employment and/or agency relationship with the other and with CoxHealth (*see https://www.tcmh.org/tcmh-coxhealth-create-formal-affiliation/*), is considered a hybrid public-private entity, as opposed to a public entity.

## FACTS COMMON TO ALL DEFENDANTS

40. Decedent would have been released from the Correctional Center's custody and control upon completion of a 30-day sentence **a mere 8 days** after his death on February 6, 2020.

41. Decedent's cause of death, according to his autopsy, was bronchopneumonia.

42. Bronchopneumonia almost never results in the death of someone as young as Decedent.

43. At the time of Decedent's autopsy, he had consolidations in his right lung in both the upper and middle lobes.

44. At the time of Decedent's autopsy, his right lung weighed over twice as much as normal.

45. When Decedent entered the Correctional Center's custody and control – on January 15, 2020 – he was healthy.

46. Upon information and belief, Decedent was a cooperative and compliant inmate and patient at all times after January 15, 2020.

47. Upon information and belief, sometime after January 15, 2020, Decedent's health, physical condition, and demeanor began to change and decline to such an extent as to become visible and/or noticeable to correctional officers, other inmates and/or other people.

48. Defendant Hartman encountered and/or treated Decedent as early as January 21,

2020.

49.     Defendant Chada encountered and/or treated Decedent as early as January 27, 2020.

50.     At least as early as February 3, 2020, Decedent was coughing up blood and having respiratory problems.

51.     On February 4, 2020, Defendant Hartman treated Decedent for Tuberculosis.

52.     On February 5, 2020, at or around 8:30 a.m., Decedent self-declared an emergency, stating "I am coughing up blood and can't breathe."

53.     On the morning of February 5, 2020, Defendant Murr was aware that Decedent could not breathe and was coughing up blood.

54.     On the morning of February 5, 2020, Defendant Hartman was aware that Decedent could not breathe and was coughing up blood.

55.     On the morning of February 5, 2020, Defendant Stephan was aware that Decedent could not breathe and was coughing up blood.

56.     On the morning of February 5, 2020, Defendant Chada was aware that Decedent could not breathe and was coughing up blood.

57.     On the morning of February 5, 2020, Defendant Chada ordered that Decedent receive antibiotics for treatment of tuberculosis but did not order Decedent to receive anything to treat bronchopneumonia or to undergo testing that would rule out bronchopneumonia.

58.     On the morning of February 5, 2020, Defendant Chada suspected that Decedent was septic but failed to transfer him to an emergency room.

59.     On the morning of February 5, 2020, one or more of Defendants Chada, Stephan, Hartman, and/or Murr caused or contributed to cause Decedent's sputum sample to be sent to the Missouri Department of Health lab without the proper identification, resulting in the sample being

13

discarded instead of being put through an AFB test (a test that could indicate the presence or lack of the bacteria that causes Tuberculosis).

60. On the afternoon of February 5, 2020, Defendant Duncan was aware that Decedent could not breathe and was coughing up blood.

61. On the afternoon or evening of February 5, 2020, one or more of Defendants Chada, Stephan, Hartman, Murr and/or Duncan caused or contributed to cause Decedent's **second** sputum sample to be sent to the Missouri Department of Health lab without the proper identification, resulting in the sample being discarded instead of being put through an AFB test (a test that could indicate the presence or lack of the bacteria that causes Tuberculosis).

62. On the evening of February 5, 2020, Defendant Duncan was aware that Decedent's oxygen saturation was 87% and that his temperature was over 100 degrees.

63. On the evening of February 5, 2020, upon information and belief, Defendant Zakroff was aware that Decedent's oxygen saturation was 87% and that his temperature was over 100 degrees.

64. On the evening of February 5, 2020, Defendant Duncan caused or contributed to cause Decedent's blood sample to be sent to the lab without the proper identification, resulting in the sample being discarded instead of being put through a blood culture test.

65. On February 5, 2020, despite being aware that Decedent had been coughing up blood for 1-2 days, Defendants Chada, Murr, Hartman, and Stephan continued treating Decedent as if he had only Tuberculosis and left him in the infirmary on respiratory isolation.

66. On February 5, 2020, despite being aware that Decedent's oxygen saturation was 87%, that his temperature was over 100 degrees, and that Decedent had been coughing up blood for 1-2 days, Defendants Duncan and Zakroff left him in the infirmary on respiratory isolation.

14

67. On February 5, 2020, Defendant Chada and/or Defendant Zakroff knew or should have known that Decedent needed to be intubated and/or transferred to a hospital, but failed to order or to otherwise achieve the same.

68. On February 5, 2020, Defendants Murr, Hartman, Stephan, and/or Duncan knew or should have known that Decedent needed to be intubated and/or transferred to a hospital, but failed to alert anyone or to otherwise achieve the same.

69. An ambulance was not called for Decedent on February 5, 2020, and did not arrive for Decedent until 8:15 p.m. **the next day** (February 6, 2020).

70. On either the evening of February 5, 2020 or the morning of February 6, 2020, one or more of Defendants Chada, Stephan, Hartman, Murr and/or Duncan caused or contributed to cause Decedent's **third** sputum sample to be sent to the Missouri Department of Health lab without the proper identification, resulting in the sample being discarded instead of being put through an AFB test (a test that could indicate the presence or lack of the bacteria that causes Tuberculosis).

71. Upon information and belief, on the morning of February 5, 2020, Defendant McNutt was aware that Decedent could not breathe and was coughing up blood.

72. On the morning of February 6, 2020, Defendant McNutt suspected that Decedent had bronchopneumonia after interpreting Decedent's chest x-ray.

73. Defendant McNutt failed to alert or to properly alert Defendant Chada of the results of Decedent's February 6, 2020 chest x-ray.

74. On February 6, 2020, Defendant Chada knew or should have known that Decedent had bronchopneumonia but continued to treat Decedent for only Tuberculosis while awaiting the results of Decedent's three **botched** AFB tests.

75. On the morning of February 6, 2020, Defendant Stephan and/or Defendant Chada

were aware that Decedent's oxygen saturation was 88% and that he had been spitting up blood and having trouble breathing for days.

76. Upon information and belief, at or around 3:00 p.m. on February 6, 2020, Defendant Hensel was aware that Decedent's pulmonary function was diminished in all lobes bilaterally and that his oxygen saturation was 80%.

77. Upon information and belief, at least as early as 3:29 p.m. on February 6, 2020, Defendant Hensel was aware that Decedent's vitals were as follows: blood pressure of 150/100, a pulse of 146, and a respiration rate of 32.

78. Upon information and belief, at or around 4:00 p.m. on February 6, 2020, Defendant Hensel was aware that Decedent's nausea was preventing him from eating.

79. Upon information and belief, Decedent's medical records from the Correctional Center Defendant incorrectly state that the vitals referenced directly above were taken at or around 8:54 p.m. on February 6, 2020.

80. Oddly, at or around 7:45 p.m. on February 6, 2020, the same alarming vitals referenced above are reproduced, except that Decedent's pulse was listed even higher – almost 20 beats per minute higher – at 160.

81. At or around 7:45 p.m. on February 6, 2020, Decedent knocked on the window to get Defendant Hensel's attention; when Defendant Hensel entered the room, Decedent was using his accessory muscles in his abdomen to breathe. Defendant Hensel proceeded to have Decedent **turn off the television** and administered to him a nebulizer treatment that lasted for 15 seconds before Decedent's oxygen saturation – even with the assistance of 4 liters of oxygen – fell to 70%. and Decedent told her again that "**I can't breathe.**"

82. At or around the same time, Defendant Hensel had the staff nurse (upon information

16

and belief, Defendant Stephan) go get an oxygen tank and non-rebreather mask; Defendant Hensel counted Decedent's breaths per minute while waiting on oxygen and determined that they were as high as 88 and that Decedent's skin was cold to the touch.

83. It was not until this point – at or around 7:55 p.m. on February 6, 2020, – that Defendant Hensel telephoned Defendant Zakroff (who was "on call") and that the order was given to send Decedent to the emergency room via ambulance.

84. At or around 8:15 p.m. on February 6, 2020, Defendants Hoffman and Baumgarner arrive at the South Central Correctional Center.

85. Upon information and belief, while in the presence of at least Defendant Hensel, and maybe even in the presence of Defendants Hoffman and Baumgarner, Decedent gave his verbal permission to be intubated.

86. In any event, at or around 8:15 p.m., Defendants Hensel, Hoffman, and Baumgarner were all aware that Decedent had given verbal permission to be intubated.

87. None of the Defendants intubated Decedent, ordered Decedent to be intubated, or otherwise alerted anyone to his need to be intubated prior to Decedent being taken to the ambulance.

88. Failing to intubate Decedent prior to transporting him via ambulance was against the policies and procedures applicable to Defendants Hoffman and/or Baumgarner.

89. Upon information and belief, failing to intubate Decedent prior to having him transported via ambulance was against the policies and procedures applicable to Defendants Hensel and/or Zakroff.

90. At or around 8:20 p.m. on February 6, 2020, Decedent was loaded by Defendants Hoffman and Baumgarner onto a stretcher and taken to the ambulance.

91.     At or around 8:30 p.m. on February 6, 2020, Decedent was having complications due to pneumonia.

92.     At or around 8:32 p.m. on February 6, 2020, Decedent was administered a breathing treatment via nebulizer by Defendants Hoffman and/or Baumgarner.

93.     At or around 8:35 p.m. on February 6, 2020, Decedent was put on a CPAP machine by Defendants Hoffman and/or Baumgarner and Decedent **had to ask** to have a tube stuck in him to help him breathe.

94.     It wasn't until at or around 8:40 p.m. on February 6, 2020 that Decedent was given an anesthetic and a paralytic by Defendants Hoffman and/or Baumgarner in preparation for intubation.

95.     It wasn't until at or around 8:44 p.m. on February 6, 2020 that Defendants Hoffman and/or Baumgarner performed rapid sequence intubation on Decedent.

96.     Once intubated, Decedent spewed a yellow/pink substance into the tube, indicative of pulmonary edema.

97.     It wasn't until at or around 8:49 p.m. on February 6, 2020 that Defendants Hoffman and/or Baumgarner caused the ambulance to leave the South Central Correctional Center.

98.     At or around 9:07 p.m. on February 6, 2020, Decedent arrived via ambulance to Texas County Memorial Hospital.

99.     At or around 9:09 p.m. on February 6, 2020, Decedent arrived to the emergency room of Texas County Memorial Hospital; by this time Decedent exhibited pulseless electrical activity (PEA) despite CPR having been in progress since 8:51 p.m.

100.    At or around 9:23 p.m. on February 6, 2020, Decedent was pronounced dead.

101.    At or around 9:52 p.m., someone – presumably named Cody – from the Hospital

Defendant's emergency room staff contacted Defendant Hensel to discuss Decedent's death and treatment at the Correctional Center Defendant's infirmary; Defendant Hensel stated that she administered an albuterol treatment until Decedent's heart rate dropped by 20 beats per minute and his oxygen also dropped, so she discontinued said treatment.

102. Defendant Hensel's medical notes state that, at 9:30 p.m., she received a call from Cody at Texas County Memorial Hospital informing her that Decedent had expired; Defendant Hensel's medical notes state nothing about a call at 9:52 p.m. nor do they say anything about stopping the nebulizer treatment due to a drop in Decedent's heart rate and/or oxygen.

103. Decedent was laid to rest on February 21, 2020.

104. With the care and treatment meeting the reasonable standard of care applicable to all Defendants, Decedent had a substantial likelihood of recovering from bronchopneumonia; the below-referenced negligence therefore deprived Decedent of the substantial chance of recovery from the same and resulted in the damages described herein.

**COUNT I – Deprivation of Medical Care in Violation of the 8th and 14th Amendments to the U.S. Constitution, Cognizable Against the State of Missouri Under 42 U.S.C. § 1983**
*Against Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner*

105. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

106. Decedent had a serious need for medical treatment, care, and attention while under the custody, control, and care of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, to wit: Decedent suffered from life-threatening bronchopneumonia, was coughing up blood, self-declared an emergency, could not breathe, had alarming vital statistics, should have been intubated, and needed to be transferred to a hospital.

19

107. Decedent's medical needs were so obvious and apparent as to be recognizable even to a layperson.

108. Defendants Chada, Murr, Hartman, Stephan, and Duncan knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when they became aware that Decedent could not breathe and was coughing up blood; alternatively, Defendants Chada and Stephan knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when they were aware that Decedent's oxygen saturation was 88% and that he had been spitting up blood and having trouble breathing for days.

109. Defendant Zakroff knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when she became aware that Decedent's oxygen saturation was 87% and that his temperature was over 100 degrees.

110. Defendant McNutt knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when he became aware that Decedent could not breathe and was coughing up blood; alternatively, Defendant McNutt knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when he suspected that Decedent had bronchopneumonia after interpreting Decedent's chest x-ray.

111. Defendant Hensel knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when she became aware that Decedent's pulmonary function was diminished in all lobes bilaterally, that his oxygen saturation was 80%, that his vitals were out of control, and/or that he was nauseous to the point of not eating.

112. Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman each deliberately disregarded the serious medical needs of Decedent by letting somewhere between several hours and multiple days lapse between the time that they knew or should have known of Decedent's serious medical needs and the time that an ambulance was called.

113. Defendants Hoffman and Baumgarner knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when they became aware of Decedent's reasons for being sent to an emergency room, including that Decedent's oxygen saturation was below 90%.

114. Defendants Hoffman and Baumgarner each deliberately disregarded the serious medical needs of Decedent by not intubating him prior to loading him into the ambulance.

115. Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner each acted under color of state law while failing and/or refusing to provide Decedent with appropriate medical care, treatment, and attention, as detailed above, despite his clear need for such medical care, treatment, and attention, as detailed above.

116. Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner knew and/or should have known that Decedent was at substantial risk of serious injury to his health, including the possibility of death, from his medical condition, but disregarded that risk by intentionally refusing and/or failing to take any reasonable measures to treat his medical conditions and/or address his medical needs.

117. As the direct and proximate result of the acts and omissions of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent suffered severe and devasting damages and injuries, prior to his

21

death, including but not limited to physical pain and suffering and severe anxiety, fear, and mental anguish.

118.    As the direct and proximate result of the acts and/or omissions of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, while acting alone or in concert with others, and with deliberate to Decedent's rights and serious medical needs, Decedent was deprived of life-saving treatment and thus suffered the loss of life, loss of future enjoyment of life, and loss of future income.

119.    As the direct and proximate result of the acts and omissions of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, **Plaintiff** and each of **Decedent's 3 minor children** have been and will forever hereafter be deprived of Decedent's love, affection, consortium, care, society, companionship, comfort, support, guidance, and numerous other valuable services.

120.    The conduct of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Decedent's constitutional rights, privileges, and immunities, **potentially** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

121.    As a result of the unlawful actions of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner and their infringements of Plaintiff's protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

<u>**COUNT II – Unconstitutional Policy**</u>
*Against Defendants Buckner, Precythe, Schmitt, and Corizon*

122.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

123.    As described in Count I, Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman, while acting under color of state law, either alone or in concert with others, deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

124.    The misconduct of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman was authorized by and undertaken pursuant to a formal policy of their employer, Defendant Corizon, in that it is and/or was the policy of Defendant Corizon to prohibit and preclude practical nurses, correctional officers and other staff from requesting that inmates be scheduled for "clinic" visits in order to be seen by registered nurses and licensed physicians, even

23

when serious medical needs of inmates are obvious and apparent so as to necessitate such treatment.

125. The serious harms incurred by Decedent were the direct consequence of this pattern, practice, and/or custom of Defendant Corizon.

126. Defendant Corizon, at all times relevant, was under the control of the following chain of command: Defendant Buckner, Defendant Precythe, the Missouri Department of Corrections, Defendant Schmitt, and the State of Missouri. As such, Defendant Corizon was an employee, agent, or apparent agent of the Defendants named in this Count.

127. As a direct and proximate consequence of the acts of Defendants Corizon, Buckner, Precythe, and/or Schmitt, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

128. As a result of one or more of the aforementioned Defendants' unlawful actions and infringements of her protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the Defendants named in this Count; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT III – Unconstitutional Pattern, Practice, and/or Custom

*Against Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner*

129. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

130. As described herein, Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

131. The misconduct of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman, as described herein, was authorized by and undertaken pursuant to a practice and custom that was so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman, in that it is and/or was the regular pattern, practice and custom to allow unqualified practical nurses to provide medical care and treatment, including but not limited to providing medical assessment, diagnosis, and treatment without the proper guidance and/or supervision of registered nurses and physicians and/or that were to be performed only by registered nurses and licensed physicians.

132. The misconduct of Defendants Hoffman and Baumgarner, as described herein, was authorized by and undertaken pursuant to a practice and custom that was so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants Hoffman and Baumgarner in that it is and/or was the regular pattern, practice and custom to allow unqualified EMTs and/or paramedics to provide medical care and treatment, including providing the same without the proper guidance and/or supervision.

25

133. The serious harms incurred by Decedent were the direct consequence of this pattern, practice, and/or custom of the Defendants named in this Count.

134. As a direct and proximate consequence of the acts of the Defendants named in this Count, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

135. As a result of the unlawful actions of the Defendants named in this Count and the infringements of Plaintiff's protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the Defendants named in this Count; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT IV – Failure to Properly Hire, Train, Supervise, and/or Discipline
*Against Defendants Buckner, Precythe, Schmitt, Missouri Department of Corrections, State of Missouri, Corizon, Texas County Memorial Hospital Community Improvement District, Texas County Memorial Hospital, and Wesley Murray (whose official capacity liability now rests with Christopher Strickland)*

136. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

137. As described herein, Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner, while acting under color of state law and

alone or in concert with others, deprived Decedent of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

138. Defendant Corizon, through the following chain of command (Defendant Buckner, Defendant Precythe, the Missouri Department of Corrections, Defendant Schmitt, and the State of Missouri), was responsible for hiring, training, supervising, and disciplining Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman,

139. One or more of Defendants Murray, Strickland, Texas County Memorial Hospital and Texas County Memorial Hospital Community Improvement District was responsible for hiring, training, supervising, and disciplining Defendants Hoffman and Baumgarner

140. Upon information and belief, each Defendant named in this Count implemented programs as to hiring, training, supervising, and/or disciplining that were non-existent, inadequate, and/or failed to provide Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner with the necessary knowledge and skills to carry out their duties and/or allowed them to routinely violate the rights of individuals without fear of repercussion or sanction.

141. Each Defendant named in this Count knew and/or should have known that its employees, staff and/or agents would routinely be in a position of interacting with persons with serious medical needs and/or in need of necessary and appropriate medical care and treatment.

142. In failing to properly hire, train, supervise and/or discipline its employees, staff and/or agents regarding these encounters, each Defendant named in this Count acted with deliberate indifference to the fact that their failure to properly hire, train, supervise, and/or

discipline would result in those under their care failing to receive necessary and appropriate medical care and treatments for serious medical concerns.

143.    As a direct and proximate consequence of the acts of the Defendants named in this Count, Decedent suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and ultimately loss of life.

144.    As a result of one or more of the unlawful actions of the Defendants named in this Count and the infringements of Plaintiff's protected rights, Plaintiff, on behalf of Decedent, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Plaintiff, on behalf of Decedent, respectfully prays that this Honorable Court: enter judgement in her favor and against the Defendants named in this Count; award her compensatory damages; award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

### COUNT V – Wrongful Death via Medical Malpractice/Negligence
*Against Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, Hoffman, and Baumgarner*

145.    Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

146.    At the time of the negligent acts and occurrences complained of herein, all Defendants were acting within the course and scope of their employment and/or agency with their respective employers or contractors, as detailed above.

147. At all times relevant, each Defendant named in this Count owed a duty to those under their custody, control, and care (such as Decedent), to possess and use that degree of skill and learning ordinarily used by the members of their profession in order to ensure their basic welfare, including ensuring that they receive necessary and adequate medical care.

148. Each Defendant named in this Count breached their duty of care to provide adequate care, including planning for and administering medical care, failing to properly examine, monitor, assess, diagnose, and treat Decedent, by not properly treating Defendant, even though:

1. Defendants Chada, Murr, Hartman, Stephan, and Duncan knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when they became aware that Decedent could not breathe and was coughing up blood; alternatively, Defendants Chada and Stephan knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when they were aware that Decedent's oxygen saturation was 88% and that he had been spitting up blood and having trouble breathing for days.

2. Defendant Zakroff knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when she became aware that Decedent's oxygen saturation was 87% and that his temperature was over 100 degrees.

3. Defendant McNutt knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 5, 2020, when he became aware that Decedent could not breathe and was coughing up blood; alternatively, Defendant McNutt knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when he suspected that Decedent had bronchopneumonia after interpreting Decedent's chest x-ray.

4. Defendant Hensel knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when she became aware that Decedent's pulmonary function was diminished in all lobes bilaterally, that his oxygen saturation was 80%, that his vitals were out of control, and/or that he was nauseous to the point of not eating.

5. Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, and Hartman each deliberately disregarded the serious medical needs of Decedent by letting somewhere between several hours and multiple days lapse between the time that they knew or should have known of Decedent's serious medical needs and the time

that an ambulance was called.

6. Defendants Hoffman and Baumgarner knew or should have known of Decedent's serious need for ongoing medical treatment, care, and attention, as early as February 6, 2020, when they became aware of Decedent's reasons for being sent to an emergency room, including that Decedent's oxygen saturation was below 90%.

149. Specifically, Defendants Chada, Zakroff, McNutt, Hensel, Duncan, Stephan, Murr, Hartman, committed negligence by not intubating Decedent and by not transferring him to a hospital in time (if at all).

150. Specifically, Defendants Duncan, Chada, McNutt and, upon information and belief, Stephan, Hartman, and/or Murr, failed to properly label Decedent's blood and/or sputum samples such that they could not be tested in a reasonable time.

151. Specifically, Defendants Hensel, Duncan, Chada, and McNutt failed to keep thorough and/or accurate medical records.

152. Specifically, Defendants Hoffman and Baumgarner committed negligence by not intubating Decedent prior to loading him into the ambulance.

153. As a direct and proximate result of the actions of the Defendants named in this Count, Decedent was deprived of life-saving medical care and experienced injuries, medical and hospital expenses, and ultimately loss of life.

154. As a direct and proximate result of the actions of the Defendants named in this Count, Plaintiff was deprived of her son and all that he meant to her life, and thereby sustained damages.

155. Plaintiff is entitled to damages against the Defendants named in this Count according to MO. REV. STAT. § 537.080 for the wrongful injuries and death of Decedent, including special damages for, among other things, his funeral and burial.

156. Decedent endured excruciating conscious physical pain and suffering, severe mental anguish, and neglect and isolation during the time preceding his death, all damages that should be considered and awarded.

157. The actions of the Defendants named in this Count constitute aggravating circumstances and this conduct was undertaken with knowledge that such conduct produced a high degree of probability of injury to Decedent and was done with reckless or callous indifference and conscious disregard for the life and safety of others, **potentially** justifying an award of punitive damages against each Defendant named in this Count so as to punish and deter him/her and others from engaging in like misconduct in the future.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

## COUNT VI – Negligence *Per Se*
### *Against Defendants Hoffman and Baumgarner*

158. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

159. Pursuant to Defendant Texas County Memorial Hospital's policies and procedures, an EMT should intubate a patient if and when their oxygen saturation drops below 90%.

160. Decedent was a prisoner under the care, custody, and control of Defendants Hoffman and Baumgarner when they began treating him.

161. While Decedent was a prisoner under the care, custody, and control of t Defendants Hoffman and Baumgarner, he was in serious need of medical care and attention in that he needed to be intubated.

162. Despite knowledge of the fact that Decedent was in need of serious medical care and attention, Defendants Hoffman and Baumgarner failed to provide such medical care and attention or to procure the same for Decedent.

163. Through their acts and omissions, Defendants Hoffman and Baumgarner violated the requirements of their own applicable policies and procedures.

164. In enacting said policies and procedures, the Texas County Memorial Hospital clearly exercised its will and intent to protect a class of persons, namely patients (including Decedent), by establishing the requirement that they be provided with necessary and proper medical care and attention as proscribed in the policies and procedures.

165. In committing the acts and omissions, as alleged herein, Defendants Hoffman and Baumgarner violated their duties of care, as established by the applicable policies and procedures.

166. As the direct and proximate result of the acts and omissions of Defendants Hoffman and Baumgarner, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, Decedent suffered severe and devasting damages and injuries, prior to his death, including but not limited to physical pain and suffering and severe anxiety, fear, and mental anguish.

167. As the direct and proximate result of the acts and/or omissions of Defendants Hoffman and Baumgarner, while acting alone or in concert with others, and with deliberate

32

indifference to Decedent's rights and serious medical needs, Decedent was deprived of life-saving treatment and thus suffered the loss of life, loss of future enjoyment of life, and loss of future income.

168. As the direct and proximate result of the acts and omissions of Defendants Hoffman and Baumgarner, while acting alone or in concert with others, and with deliberate indifference to Decedent's rights and serious medical needs, **Plaintiff** and each of **Decedent's 3 minor children** have been and will forever hereafter be deprived of Decedent's love, affection, consortium, care, society, companionship, comfort, support, guidance, and numerous other valuable services.

169. The conduct of Defendants Hoffman and Baumgarner, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Decedent's constitutional rights, privileges, and immunities, **potentially** justifying an award of punitive damages against each Defendant so as to punish and deter him/her and others from engaging in like misconduct in the future.

170. As a result of the unlawful actions of Defendants Hoffman and Baumgarner and the infringements of her Plaintiff's rights, Plaintiff has been compelled to retain counsel in this matter and should therefore receive a recovery of attorneys' fees and legal costs.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court: enter judgement in her favor and against each of the Defendants named in this Count (jointly and severally, if applicable); award her compensatory damages and **potentially** punitive damages (should the proper showing be made pursuant to Mo. Rev. Stat § 510.261, to the extent that it applies here); award her reasonable costs and attorneys' fees; award her prejudgment interest, pursuant to Mo. Rev. Stat § 408.040, on the entire damages amount; and grant her any and all such other and further relief as this Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff hereby requests a trial by jury on all issues of fact and damages to the fullest extent of his rights pursuant to the provisions of the Seventh Amendment of the U.S. Constitution, Article I §22(a) of the Missouri Constitution, and all applicable case law interpreting such provisions.

**Respectfully submitted,**

**ZDP LAW, LLC**

*/s/ Zachary D. Poole*
Zachary D. Poole, MO #66156
Connor G. Curran, MO #69483
4330 Belleview Ave, Suite 300A
Kansas City, MO 64111
P: (816) 226-8260
F: (816) 343-9321
*zpoole@zdplaw.com*
*ccurran@zdplaw.com*

and

*/s/ Christopher D. Dandurand*
Stephen M. Gorny, MO #45417
Christopher D. Dandurand, MO #63775
**THE GORNY LAW FIRM, LC**
4330 Belleview Avenue, Suite 200
Kansas City, MO 64111
P: (816) 756-5071
F: (816) 756-5067
*steve@gornylawfirm.com*
*chris@gornylawfirm.com*

**ATTORNEYS FOR PLAINTIFF**