IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| CASSANDRA OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 6:21-cv-03226-MDH |
| | ) | |
| CORIZON LLC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# ORDER

Before the Court is Defendant Stephan's Motion for Summary Judgment. (Doc. 251). The motion has been fully briefed and is ripe for review. Plaintiff brings the following claims against Defendant: Count I – Deprivation of Medical Care in Violation of the 8th and 14th Amendments under 42 U.S.C. § 1983; and Count V – Wrongful Death via Medical Malpractice/Negligence. Defendant Stephan moves for summary judgment on both counts.

## BACKGROUND

This case arises out of the death of Michael Anderson who was incarcerated at South Central Correctional Center ("SCCC") in Licking, Missouri. Anderson arrived at SCCC on or about January 21, 2020. He had previously been confined at Fulton Reception and Diagnostic Center from October 24, 2019 to January 21, 2020. Anderson remained at SCCC until February 6, 2020, when he was transported to Texas County Memorial Hospital, in Houston, Missouri. Anderson died on February 6, 2020.

Defendant Marley Stephan became a Family Nurse Practitioner in 2022. Prior to becoming an FNP, Stephan had been a registered nurse since 2012. Stephan was employed by Corizon as a nurse. Corizon was under contract with the State of Missouri to provide medical care and treatment

to offenders incarcerated within MDOC. The medical director at SCCC was Ashok Chada, M.D., and he was also employed by Corizon. Stephan states that only doctors, not nurses, can diagnose patients and order treatment and that her duty was to fulfill physician's orders and Plaintiff admits this.

When Anderson arrived at SCCC he had already been tested and diagnosed with tuberculosis. At 8:30 a.m. on February 5, 2020, Anderson self-declared a medical emergency and presented to the Medical Unit. He complained he could not breath, he was coughing up blood, and he had chest pain. Anderson was seen by nurse Murr who noted his complaints.

Nurse Murr conferred with Dr. Chada and nurse Hartman. Dr. Chada issued orders to admit Anderson to the infirmary, obtain a chest x-ray, obtain an AFB sputum sample, conduct a PPD tuberculosis skin test, and contact a provider if his temperature was over 100.4 degrees. Dr. Chada further ordered that if Anderson's temperature was over 100.4 degrees two blood cultures should be obtained and two additional sputum samples. Plaintiff disputes some of the details of the orders issued by Dr. Chada, including whether Dr. Chada issued them and the timing of the orders.

Anderson was admitted to the infirmary around 9:15 a.m. Stephan was working the dayshift as the infirmary nurse when Anderson was admitted. Neither Anderson nor anyone else told Stephan that Anderson had been coughing up blood. Anderson was placed in a respiratory isolation room. During Stephan's shift she noted, Anderson was polite and respectful; his oxygen saturation had increased to 94 percent on room air; his respirations were even and unlabored. Stephan did not observe any signs of fatigue or malaise from Anderson during her shift. Stephan went off her shift at approximately 3:00 p.m. on February 5, 2020.

Stephan worked the 7:00 a.m to 3:00 p.m. dayshift in the infirmary on February 6, 2020. A third sputum sample was collected that morning. At approximately 10:30 a.m. Kent McNutt,

2

D.O., a radiologist at Mid-Missouri Medical called SCCC and informed Dr. Chada that the results of the chest x-ray ordered on February 5, 2020 indicated Anderson had pneumonia. At approximately 10:30 a.m. Stephan administered a second dose of Rocephin to Anderson. Plaintiff disputes some of the details of these medical notes.

Dr. Chada prescribed 750 mg levofloxacin, an antibiotic, and saw Anderson at 11:20 a.m. He noted that Anderson was in no acute distress. During the day shift, Stephan noted Anderson's respirations were even and unlabored, he was resting quietly, showed no signs or symptoms of distress and had no concerns. Anderson was utilizing supplied oxygen at two listers and his oxygen saturation level was 92 percent. Stephan went off her shift at 3:00 p.m. She recalled Anderson being very polite and respectful and referred to him as a dream patient.

Later around 7:55 p.m. on February 6, 2020 orders were given to transport Anderson to the hospital. Anderson was transported to Texas County Memorial Hospital. Anderson died from bronchopneumonia.

The specific allegations against Stephan include: mislabeling Anderson's sputum and blood samples to be sent to the Missouri Department of Health resulting in the samples being discarded instead of testing; and a failure to intubate Anderson or send him to the emergency room.

Plaintiff has endorsed Michael T. Puerini, M.D. a correctional physician specialist. Dr. Puerini opines that "based on the chart documentation, Anderson required hospital care from the morning hours of February 5, 2020. At that point in the course of his severe acute illness, his life would have been saved had Dr. Chada simply chosen to hospitalize his acutely ill patient." Dr. Puerini opines that Anderson's death was clearly preventable.

Dr. Puerini opines that the nurses at SCCC had ample opportunity to save Anderson's life by transporting him to the hospital. He believes the plan of care, and the records, reflect a culture

of non-care and the plan of care was shocking, deplorable, and a severe breach of the standard of care.

Plaintiff has also endorsed Thomas M. Hyers, M.D. a practicing pulmonologist who is experienced in the diagnosis and treatment of respiratory infections.

Finally, Plaintiff has endorsed Lisa Swolensky, R.N. a licensed, practicing Registered Nurse with experience in the acute care setting. Ms. Swolensky opines that the care rendered to Anderson deviated from the applicable standard of care.

## STANDARD OF REVIEW

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp., v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248.

A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249.

## DISCUSSION

1. **Count I – Section 1983 – Deliberate Indifference**

In actions by prison inmates against prison officials for deliberate indifference under 42 U.S.C. Section 1983, it must be proven that: plaintiff suffered from objectively serious medical

4

needs; the defendant(s) knew of the condition; and the defendant deliberately disregarded the complaint. *Kitchen v. Miller,* 343 F. Supp. 2d 820, 823, (E.D. Mo. 2004); and *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).

To support a claim of deliberate indifference under 42 U.S.C. Section 1983, "a prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995). A medical decision not to order a particular course of treatment or testing does not represent cruel and unusual punishment. *Estelle v. Gamble,* 429 U.S. 97, 107 (1976). Displeasure with a course of medical treatment is not sufficient to rise to a constitutional violation and prisoners do not have a constitutional right to any particular type of treatment. *Kitchen v. Miller*, 343 F.Supp. 2d at 823 and *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996).

Prison doctors may exercise their independent medical judgment, and failure or refusal to follow the recommendation of outside consultants does not automatically amount to an abuse of that judgment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997). Medical professionals may be absolved of liability if they responded reasonably to an inmate's medical needs, even if harm was not ultimately averted. *Id.* An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. *Crowley v. Hedgepeth,* 109 F.3d 500, 502 (8th Cir. 1997).

Plaintiff has alleged, and has submitted an expert opinion(s), that Stephan's care and treatment of Anderson violated the standard of care and was "shocking and deplorable." Plaintiff's experts further opine Anderson's death was "clearly preventable" and he more likely than not

5

would have survived and recovered completely. Plaintiff has provided expert opinions that create a genuine issue of material fact regarding the treatment of Anderson.

The Court makes no ruling on whether Plaintiff can ultimately prevail and support a claim of deliberate indifference under 42 U.S.C. Section 1983. However, Plaintiff has presented enough evidence in the summary judgment briefing, and in the expert reports, to create a factual dispute to survive summary judgment. Defendant's motion for summary judgment on Plaintiff's Section 1983 claim is denied.

### 2. Count V - Wrongful Death via Medical Malpractice/Negligence

To make a submissible case of negligent medical treatment, plaintiff must establish that 1) an act or omission of defendant failed to meet the requisite medical standard of care, 2) the act or omission was performed negligently, and 3) there was a causal connection between the act or omission and plaintiff's injury. *Sheffler v. Arana,* 950 S.W.2d 259, 267 (Mo. App. W.D. 1997). Expert testimony is required to support claims of medical negligence. *Ladish v. Gordon,* 879 S.W.2d 623, 628 (Mo. App. W.D. 1994). In order for plaintiff to make a submissible medical malpractice claim against the provider, plaintiff must show that the defendant failed to use the degree of skill and learning ordinarily used under the same or similar circumstances by members of the profession. *Huelskamp. v. Patients First Health Care, LLC*, 475 S.W.3d 162, 168 (Mo. App. E.D. 2014).

To survive summary judgment on the issue of causation in a wrongful death case, plaintiff must demonstrate that there is a genuine issue of material fact regarding whether the defendant's conduct was both the cause in fact and the proximate, or legal, cause of the death. *Sundermeyer v. SSM Regional Health Servs.,* 271 S.W.3d 552, 554 (Mo. banc. 2008). The cause in fact is determined by asking whether the plaintiff's injury would not have occurred "but for" defendant's

6

conduct, and a defendant's conduct is also the proximate cause of the plaintiff's injury if the injury complained of was the natural and probable consequence of the defendant's conduct. *Guffey v. Integrated Health Servs. Of Kansas City at Alpine N.,* 1 S.W.3d 509, 518 (Mo. App. W.D. 1999).

Here, Plaintiff has offered expert testimony that Anderson's chart shows that he required hospital care from the morning hours of February 5, 2020 and that his life would have been saved had he been hospitalized. Stephan was involved in Anderson's care during this time. Based on the record before the Court, the Court finds a genuine issue of material fact exists regarding the issues presented in Plaintiff's claim for medical negligence. The role nurse Stephan played, if any, with regard to Anderson's care and ultimate death is a factual dispute for the jury. Based on the record before the Court, the Court finds a genuine issue of material fact exists regarding the issues presented in Plaintiff's claim for medical negligence. Defendant's motion for summary judgment on Plaintiff's Count V - Wrongful Death via Medical Malpractice/Negligence is denied.

## DECISION

Wherefore, for the reasons set forth herein, Defendant's motion for summary judgment is **DENIED.** (Doc. 251).

**IT IS SO ORDERED.**

DATED: December 17, 2024

                                           */s/ Douglas Harpool*
                                           **DOUGLAS HARPOOL**
                                           **UNITED STATES DISTRICT JUDGE**